UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Daniel Wesley Allen,

Petitioner,

vs. REPORT AND RECOMMENDATION

Warden Constance Reese,
Federal Medical Center,
Rochester, Minnesota

Respondent. Civ. No. 01-1097 (RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 4th day of February, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus. See, Title 28 U.S.C. § 2241. The Petitioner has appeared pro se, and the Respondent has appeared by David P. Steinkamp, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for Habeas Corpus be denied.

## II. Factual and Procedural History

The Petitioner is currently serving a 210-month prison term, which was imposed by the United States District Court for the Cen-

FILED FEB 04 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ________
DEPUTY CLERK ________

tral District of California. The Petitioner is currently being incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"). On September 6, 2000, at approximately 6:20 o'clock a.m., Officer Rosemark, who is employed at FMC-Rochester, conducted a search of the Petitioner's living quarters, and discovered a jar labeled "Flax Oil 1000," which was found to contain 160 pills which were labeled "MYLAN 6410."[1] Based on that discovery, an incident report was written which charged the Petitioner with a violation of Code 305, possession of anything not authorized, as well as with a violation of Code 113, "[p]ossession of any narcotics, marijuana, drugs or related paraphernalia not prescribed for the individual by the medical staff." See 28 C.F.R. §541.13, Table 3. On that same day, a copy of this incident report was provided to the Petitioner.

During the UDC's investigation of the charged violation, the Petitioner stated that he had brought the pills with him, from the Federal Correctional Institution in Taft, California ("FCI-Taft"), which was the prison at which he had been held prior to his incarceration at FMC-Rochester. The Petitioner explained that, at FCI-

[1]Mylan 6410 is a brand name of Doxepin, a generic name for Sinequan, which is a medication indicated for the treatment of "anxiety, tension, depression, somatic symptoms and concerns, sleep disturbances, guilt, lack of energy, fear, apprehension and worry." Physicians' Desk Reference, p. 2515 (55th Ed. 2001); see also, Halverson Declaration at 2-3.

Taft, he had been given two to three pills at a time and, because of a desire to reduce the amount of this medication that he was taking, he had not administered all of the pills that had been dispensed to him. The investigator contacted the FMC-Rochester pharmacy, and learned that the Plaintiff had no prescription for Mylan 6410 at FMC-Rochester, and that, even if he had, the pills would have been dispensed in a pill line, where he would have been required to administer them immediately. In addition, the investigator learned that the medication could be fatal on overdose, and that the 160 pills, which were in the Petitioner's possession, would constitute an overdose amount.

The Unit Disciplinary Committee ("UDC") recommended that the Code 305 violation be dropped, and it referred the Code 113 to the Disciplinary Hearing Officer ("DHO") for a factfinding Hearing, with the further recommendation that, if the Petitioner were found to have committed the violation, then he should be disallowed fourteen days of good time credit. The Petitioner was provided, by a member of the UDC, with notices of the Hearing before the DHO, and of his rights at that Hearing. The Plaintiff signed both notices, and indicated that he did not wish to have a staff representative, or witnesses, at the Hearing.

A Hearing on the charge was conducted on September 19, 2000. At the conclusion of the Hearing, the DHO made a finding that the

greater weight of the evidence supported the determination that the Petitioner committed the prohibited act, as charged. The DHO sanctioned the Petitioner with forty days loss of good conduct time, and thirty days disciplinary segregation, which was suspended pending 180 days of clean conduct. The Petitioner's subsequent Regional Administrative Remedy Appeal, and Central Office Administrative Remedy Appeal, were denied, as was the Petitioner's re-submitted Regional Administrative Remedy Appeal.

In regard to this incident, and to the sanction imposed, the Petitioner contends that his Due Process rights were violated in three ways. First, he asserts that he was erroneously charged with the Code 113 violation, because he had a prescription for the medication found in his quarters. Second, he contends that his waiver of his right, to be represented by a staff member, to call witnesses, and to present evidence on his behalf, at the Hearing, was not voluntary and knowing. Finally, the Petitioner asserts that the finding at the DHO Hearing and on subsequent appeal, that he had violated Code 113, was arbitrary and capricious, and was based upon an insufficient investigation into the facts.

## III. Discussion

A. Standard of Review. The Fifth Amendment prohibits the Federal Government from depriving a person of life, liberty, or property, without due process of law. While it is true that the

constitutional protections, which are encompassed by the Due Process Clause, do not abate at the time of imprisonment, see Hudson v. Palmer, 468 U.S. 517, 539 (1984)(O'Connor, J., concurring), it is also true that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sanding v. Conner, 515 U.S. 472, 485 (1995), quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977), quoting in turn, Price v. Johnston, 334 U.S. 266, 285 (1948).

Although prison disciplinary proceedings often implicate liberty interests, they are not criminal Trials and, therefore, they do not involve the full panoply of procedural and substantive protections that are available in criminal proceedings. See, Wolff v. McDonnell, 418 U.S. 539, 567-68 (1974). Nevertheless, in Wolff, the Supreme Court enumerated the minimum due process requirements of a prison disciplinary proceeding as follows:

> 1. Written notice of the claimed violation must be given to the prisoner at least 24 hours prior to the Hearing;
>
> 2. A written statement must be compiled by the factfinder describing the evidence relied upon and the reasons for the findings and disciplinary action;
>
> 3. The prisoner should be permitted to call witnesses and to present evidence in defense of the charges, unless doing so would jeopar-

> dize institutional safety or correctional goals; and
>
> 4. Where the inmate is illiterate, or the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

Id. at 563-70.

Beyond these procedural due process considerations, the Supreme Court has determined that, in order to comply with constitutional due process, at least "some evidence" must support the finding of a disciplinary sanction. See, Superintendent v. Hill, 472 U.S. 445, 455 (1985). As explained by the Court:

> This standard is met if there is some evidence from which the conclusion of the administrative tribunal could be deduced. * * * Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455; see also, Goff v. Dailey, 991 F.2d 1437, 1440 (8th Cir. 1993).

Given these legal precepts, we turn to an analysis of the Petitioner's grievance.

B. Legal Analysis. After reviewing the Record, in light of the asserted due process violations, we find that the Petitioner

was provided adequate procedural due process protections, which fully complied with the requisites of Wolff. First, he was given written notice of the charge, in the form of an incident report, on September 6, 2000, well in advance of 24 hours prior to his appearance before the DHO on September 19, 2000. See, Exhibit 2 to the Declaration of Anthony Boyd. Second, as required, the factfinder provided the Petitioner with a written statement describing the evidence relied upon, and the reasons for the findings, and the disciplinary action. See, Exhibit 5 to the Declaration of Anthony Boyd. Finally, the Petitioner was informed of his rights to be represented by a staff member, to call witnesses, and to introduce evidence at the Hearing, and he waived those rights.

The Petitioner does not deny that he was provided with those rights, as he signed the Inmate Rights Form, which informed him of his rights under Wolff. Nor does he deny that he was provided with, and signed, the Notice of Disciplinary Hearing before the Discipline Hearing Officer Form, on which he recorded that he did not wish to have a staff representative assist him, nor did he plan to call any witnesses. Rather, the Petitioner contends that the UDC member, who gave him these forms, "never explained the importance of obtaining Staff Representation or of calling Witnesses," Memorandum in Support of Petition for Writ of Habeas Corpus, at 5, and thus, his waiver of those rights "was not knowing or informed."

Petition for Writ of Habeas Corpus, at 3e. The Petitioner contends that he should have been informed that having staff representation was "absolutely necessary," because it was the only means by which he could gain access to any exculpatory evidence found during the investigation of his grievance, as inmates do not receive copies of the investigation report, but staff representatives do.

However, the Petitioner makes no assertion that he was unable to understand the rights that were provided to him on the form, that he was threatened, tricked, coerced, or intimidated, into waiving those rights, or that he attempted to assert those rights and was thwarted in doing so by a prison official. Absent such a showing, we are unable to find that the Petitioner did not voluntarily, and knowingly, waive his rights. While the Petitioner may now wish, that he had not waived those rights, any election an individual makes will have pros, and cons, and, we suspect, that if the election later proves disadvantageous, the individual can always claim ignorance. Making such a claim, however, does not establish an entitlement to withdraw the prior election that was both knowing, and voluntary. From the evidence submitted, the Petitioner was informed of his rights and, of his own accord, he elected to waive them.

Moreover, after reviewing the evidence which was presented at the Hearing, it is clear that there was "some evidence" to conclude

that the Petitioner was guilty of the offense charged. The Petitioner argues that he was wrongfully found to have violated Code 113, because his medical records showed that he had a valid prescription from FMC-Rochester, and from FCI-Taft, for the drugs in question, and therefore, he could not have violated any Rule or Regulation. See, Memorandum in Support of Petition for Writ of Habeas Corpus, at 3-4. We do not agree, and we find that there was "some evidence" to conclude that the Petitioner committed the offense of which he was charged, and he was, therefore, not denied due process of the law in that regard.

Ultimately, the Petitioner's argument fails because it is predicated on an incorrect premise. The crux of the Petitioner's argument is that if he, at one time, had a valid prescription for the medication that was found in his cell, then he could not have been found guilty of the Code 113 violation. It is clear, however, that this is not the case. In the recitation of the specific evidence relied upon to support her findings, the DHO stated that the fact, that the pills were found in a jar labeled Flax Oil 1000, revealed that the Petitioner was attempting to disguise his possession of those prescriptive pills, which he possessed in sufficient numbers to cause a fatal overdose to himself. Exhibit E of Exhibits in Support of Petition for Writ of Habeas Corpus at 2. Further, the DHO explained that the "possession of any controlled

drugs, except by express permission of medical staff, cannot and will not be tolerated." Id. at 3. Thus, the DHO found the Petitioner had violated the offense on the basis that he was in possession of the medication without permission, and not on the basis that the medication that he possessed had not been prescribed to him at some unknown time in the past.

Further, in the written response to the Petitioner's Regional Administrative Remedy Appeal, the Regional Director affirmed the DHO's decision, that the Petitioner had violated Code 113, citing to the fact that the Petitioner had not been prescribed the medication at FMC-Rochester, and that, even if he had, it "would have only been given out in pill line for immediate use." Exhibit F of Exhibits in Support of Petition for Writ of Habeas Corpus. Thus, once again, the decision to find that the Petitioner had violated Code 113 was not based solely on a finding that the Petitioner did not have a prescription for the medication, but also because he was not authorized to possess 160 pills in his cell. The Petitioner advances no authority that such reasoning is unlawful or otherwise impermissible.

Likewise, in his response to the Petitioner's Central Office Administrative Remedy Appeal, the National Inmate Appeals Administrator explained that the medication at issue was "only administered through the pill line," where the inmate "must take the

medication immediately in the presence of a staff member," and thus, that his "possession of the medication was unauthorized." Exhibit G of Exhibits in Support of Petition for Writ of Habeas Corpus. The Administrator further explained that the fact that the Petitioner had been prescribed the medication at another facility would "not serve to excuse [his] unauthorized possession of it." Id.

Plainly, the Petitioner's due process argument must fail. His contention, that he had a prescription for the medication, was addressed at each step of the administrative process, and the Petitioner was, nonetheless, found to have violated Code 113 based on the fact that he impermissibly had possession of that medication. We find no error in this reasoning. When medication is prescribed, and provided to a recipient, the prescription informs the user of the dosage, and timing for the dosage. Here, a lethal dose of medications was found to be illicitly in the Petitioner's possession, and in a container disguised to be something that it was not. At FMC-Rochester, such medications were only to be administered in the supervised pill line, and they are not permitted to be kept by an inmate in his cell, particularly in overdose quantities. Thus, even if the Petitioner did, at one time, have a valid prescription

from FCI-Taft, or from FMC-Rochester,[2] he had no prescription which would permit him to possess those pills at the time of his infraction. Therefore, we find that there was "some evidence" -- by every appearance, ample evidence -- to conclude that the Petitioner committed the offense of which he was charged and, finding no due

---

[2]Even though it does not alter the result we reach, we briefly address the Petitioner's contention, that he had a prescription for the medication from FMC-Rochester, in the interests of completeness, as the Petitioner contends that a proper investigation, which complied with due process, would have revealed that he held a prescription for the medication. The assertion is incorrect for at least two reasons.

First, while it is true that, at one time, the Petitioner did have a prescription for Doxepin while at FMC-Rochester, according to the sworn declaration of James M. Halverson ("Halverson"), who was the Chief Pharmacist at FMC-Rochester, that institution had "never purchased the Mylan brand of Doxepin." Halvorsen Declaration at 3. Thus, FMC-Rochester was not the source of the particular pills that were found, in lethal dosages, in the Petitioner's cell.

Second, at the time that the pills were uncovered, the Petitioner's prescription for the Doxepin, at FMC-Rochester, had been discontinued. According to Halvorsen, after a conversation with the Petitioner on July 3, 2000, in which the Petitioner stated that "he did not wish to continue taking Doxepin," his prescription was discontinued, and no additional refills were made. Id., see also, Exhibit 1 attached to the Halvorsen Declaration at unnumbered p. 7. Thus, the Petitioner's contention, that he was denied due process, because a proper review of his medical records would have revealed a prescription for the medication at issue, lacks any substantive merit. Simply put, at the time the medication was discovered, the Petitioner held no valid prescription for Doxepin in any form, much less a prescription that would allow him to hoard 160 of the pills for such administration as he should choose. Accordingly, we find that, even if there were some procedural deficiencies in the rights accorded the Petitioner -- a finding we expressly reject -- substantively, he was not denied due process of law.

process violation, we recommend that the Petition for Writ of Habeas Corpus be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 19, 2002**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall

timely order and file a complete transcript of that Hearing **by no later than February 19, 2002,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.